THE AMERICAN TRADING COMPANY *v.* THE REGISTRAR OF PROPERTY.

APPEAL from a decision of the Registrar of Property of Mayagüez.

No. 102.—Decided October 27, 1911.

CANCELLATION OF MORTGAGE INSTALMENTS—ADJUDICATION OF MORTGAGED PROPERTY—ADEQUATE PROCEDURE.—The question of whether or not the several instalments of a mortgage should be considered as independent mortgages— that is, that the first instalment be considered as a first mortgage, the second as a second mortgage, and so on—is a legal question which has not been decided clearly by law, nor in a clear and decisive manner by jurisprudence and, involving as it does a question of preference of credits, it should not be decided in *ex parte* proceedings.

ID.—CANCELLATION BY OPERATION OF LAW—EX PARTE PROCEEDINGS.—The provisions of article 125 of the Mortgage Law are not applicable to a case wherein the cancellation of the several instalments of a mortgage is sought to be obtained, and in such case the procedure provided by article 82 of the Mortgage Law should be followed.

The facts are stated in the opinion.

*Mr. Felipe Casalduc* for appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

By a deed executed in Mayagüez on May 11, 1900, before Notary Riera Palmer, Luis Arán acknowledged that he owed Baudilio Durán 130,000 provincial *pesos* and agreed to pay the same in 10 instalments falling due on the 11th day of May of each year from 1901 to 1910, the debtor executing a note for the amount of each instalment in favor of the credi-

tor, and also giving a mortgage upon certain farm properties belonging to him as security for the payment of his debt.

The American Trading Company acquired the note falling due on May 11, 1903, and in order to collect the same applied to the courts by instituting the summary proceedings authorized by the Mortgage Law. The debt not having been satisfied within the time specified in the judicial demand, six of the mortgaged properties were sold at auction and were acquired by the said The American Trading Company in partial payment of its credit.

When the credit of The American Trading Company was demanded it amounted to $10,222.63 U. S. currency, and when the encumbrances were distributed among the mortgaged properties by deed of May 11, 1900, the following liabilities were assigned to each of the six properties which were sold at auction and acquired by The American Trading Company in partial payment of its credit: (a) 30 *cuerdas* at Naranjales, $1,000 principal and $300 additional; (b) 11 *cuerdas* at Río Cañas, $460.98 principal and $150 additional; (c) 4 *cuerdas* at Río Cañas Arriba, $150 principal and $50 additional; (d) 2 *cuerdas* at Río Cañas Arriba, $50 principal and $20 additional; (e) 28 *cuerdas* at Río Cañas Arriba, $1,000 principal and $150 additional; (f) plantation "Collera" at Furnias consisting of 140 *cuerdas,* $29,664.11 principal and $1,000 additional, amounting in all to $32,325.09 principal and $1,670 additional liabilities, both in provincial currency.

A deed of sale having been executed by the marshal in favor of said company, which deed appears recorded in the Registry of Property of Mayagüez under date of March 16, 1908, The American Trading Company petitioned the district court and after several interlocutory steps, in none of which was direct notice given to the interested parties, obtained an order requiring the registrar of property to cancel the record of the mortgage which, according to the deed of May 11, 1911, was imposed upon the properties sold, among

others, to The American Trading Company, as hereinbefore stated.

The order was made on June 7, 1911, and the registrar refused to make the cancellation ordered for the reasons set forth in the following decision:

"I hereby refuse the cancellation of the mortgage given by Luis Arán in favor of Baudillo Durán, as requested in the foregoing order, regarding the six properties adjudicated to The American Trading Company, the liabilities whereof, according to the registry, amount to $32,325.09, provincial currency, as principal, and interest at 6 per cent per annum, and $1,670, provincial currency, as costs, because article 125 of the Mortgage Law cited in support of the order for cancellation, without notice to the parties who may be prejudiced thereby, refers to subsequent records of a mortgage, and in the present case we are dealing with different instalments of one mortgage only; and the cancellation thereof not having been sought through the procedure established in article 82 of the Mortgage Law, which provides the general rule on the subject and is, besides, in conformity with the decisions of the General Directorate of Registries upon this point in the decision of May 4, 1898, and in place thereof the proper cautionary notice is entered,  *  *  *."

While it must not be understood that we are deciding the fundamental question involved in this case inasmuch as this administrative appeal is not the proper procedure therefor, we will consider and decide the question of whether the cancellation involved herein should have been ordered, as it was, by the District Court of Mayagüez on the special authority given by article 125 of the Mortgage Law, or whether such cancellation should have been obtained in accordance with the general rules established by article 82 of the same law, as held by the registrar.

It is quite clear that this case does not expressly fall within the provisions of article 125 of the Mortgage Law, which in its pertinent part reads as follows:

"In the case of one or several estates being encumbered by mortgage debts of various creditors, and they are sold or awarded for the payment of the first creditor in such manner that the value of what

is sold or awarded does not equal or exceed the mortgage debt which is liquidated, the remaining debts shall be, by act and right, considered canceled, and will therefore be canceled in the registry after the proper order of the court for the sale or award, and the reasons therefor are filed referring to the instrument which created the solvency of the preferred debt, all subsequent records of annuities (*censos*) or mortgages and records of attachment also made subsequently, thus leaving the estate or estates which have been conveyed or awarded free from all encumbrances."

The district court itself so understood when, in its decision of June 2, 1911, in decreeing the issuance of the order requested by the appellant, it stated that it applied the said article "by analogy."

In that decision, which, as has been stated, was rendered without hearing all the parties really interested, the district court decided offhand that the several instalments of a mortgage should be considered as different mortgages; that is, that the first instalment has the character of a first mortgage, the second of a second mortgage, and so on.

Said legal question has not been decided clearly by law, nor in a clear and decisive manner by jurisprudence, and, involving as it does a decision as to a preference of credits, it should not have been decided on a motion *ex parte*. (See sec. 807 of the Revised Statutes of Porto Rico.)

According to the provisions of article 82 of the Mortgage Law, in order to effect the cancellation sought in this case it is necessary to present in the registry the deed or authentic document containing the express consent for such cancellation by the person in whose favor the record has been made, or by his successors in interest or his legal representatives, or a final judgment properly decreeing said cancellation, given in a contested action instituted before a competent court.

For the foregoing reasons the appeal cannot be sustained, and the decision appealed from should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf, and Aldrey concurred.